# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHERINE ROBERTS ) | |
| AND ) | |
| KRISTEN CLEMENTS ) | |
| ) | |
| Plaintiffs, ) | Civil No.: 14-3890 |
| v. ) | |
| ) | |
| CAESAR'S ENTERTAINMENT, INC. ) | JURY TRIAL DEMANDED |
| D/B/A HARRAH'S PHILADELPHIA, et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS', CATHERINE ROBERTS AND KRISTEN CLEMENTS, RESPONSE IN OPPOSITION TO DEFENDANT, JOANNE DRAGOTTA'S, MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs, Catherine Roberts and Kristen Clements, by and through their counsel of record, Schrom, Shaffer & Botel, hereby submit the following memorandum of law in opposition the Defendant, Joanne Dragotta's, Motion to Dismiss Plaintiffs' First Amended Complaint and aver as follows:

## I. RELEVANT FACTS

Plaintiffs, Catherine Roberts and Kristen Clements, allege in their First Amended Complaint that defendant, Caesar's Entertainment Corporation., wrongfully retaliated against them for asserting their contractual rights to fair pay and fair working conditions under the terms of their union collective bargaining agreement at its Chester, Pennsylvania facility, more commonly known as "Harrah's Philadelphia". (Amd. Cplt. ¶1). Caesar's management had the plaintiffs arrested and prosecuted. Defendant, Pennsylvania State Police Officerr Joanne Dragotta, participated in the arrest, detention and prosecution of the plaintiffs. (Amd. Cplt. ¶1).

Defendant, Joanne Dragotta, was stationed at Harrah's facility. She filed a criminal complaints against and obtained a warrant of arrests for Ms. Roberts for receiving stolen

property in the amount of $627.77, citing a violation of Section 3825(a) of the PA Crimes Code. (Amd. Cplt. ¶ 61);. and Ms. Clements for theft of moveable property in violation of 18 Pa.C.S.A. § 3921(a). b.receiving stolen property in violation of 18 Pa.C.S.A. § 3825(a); and .forgery in violation of 18 Pa.C.S.A. § 4101(a)(1). (Amd. Cplt. ¶ 62).

After obtaining warrant of arrest, Ms. Dragotta contacted Plaintiffs by telephone and ordered them to surrender themselves to her at the State Police post located on Harrah's premises. (Amd. Cplt. ¶ 63) On May 1, 2012 Plaintiffs surrendered themselves to Trooper Dragotta and upon their arrival were suspended from employment by Harrah's. (Amd. Cplt. ¶ 63). At approximately 9 a.m that same morning., on authority of the warrants of arrest and/or criminal complaints procured by Trooper Dragotta, Plaintiffs were taken into custody, fingerprinted, photographed and handcuffed at the State Police post located on Harrah's premises. (Amd. Cplt. ¶ 64 ) They were then transported in handcuffs to a City of Chester, Pennsylvania lockup by City of Chester police. (Amd. Cplt. ¶ 64)

At the Chester City lockup, Plaintiffs were ordered to remove the shoelaces from their shoes, were placed in a holding cell shackled to fixtures in the cell and remained in handcuffs for the duration of their detention there. (Amd. Cplt. ¶ 65) Later on in the afternoon of May 1, Plaintiffs were brought before a magisterial district justice in handcuffs for a preliminary arraignment. (Amd. Cplt. ¶ 66). At that hearing, the magisterial district justice released Plaintiffs on their own recognizance. (Amd. Cplt. ¶ 67). As a condition of their release from custody Plaintiffs were placed on travel restrictions, prohibiting them from traveling outside the Commonwealth of Pennsylvania without permission of the court. (Amd. Cplt. ¶ 68). Plaintiffs were thereafter summoned to appear at a preliminary hearing. (Amd. Cplt. ¶71) Following referral of the matter to the Court of Common Pleas of Delaware County Plaintiffs were required

on numerous subsequent occasions to be present at hearings before that Court until charges against them were dismissed on motion for habeas corpus. (Amd. Cplt. ¶ 73.).

## II. MOTION TO DISMISS STANDARD

In a motion to dismiss for failure to state a claim, all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor. Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989) The Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief. Port Authority v. Arcadian Corp., 189 F.3d 305, 311 (3d Cir.1999).

## III. QUESTIONS PRESENTED

**A. DID DEFENDANT DRAGOTTA'S ARREST AND INCARCERATION OF PLAINTIFFS CONSTITUTE A "SEIZURE" UNDER SECTION 1983 JURISPRUDENCE?**

**SUGGESTED ANSWER IN THE AFFIRMATIVE.**

**B. PLAINTIFFS WITHDRAW THEIR STATE MALICIOUS PROSECUTION CLAIMS AGAINST THE DEFENDANT.**

## IV. ARGUMENT

**A. DID DEFENDANT DRAGOTTA'S ARREST AND INCARCERATION OF PLAINTIFFS CONSTITUTE A "SEIZURE" UNDER SECTION 1983 JURISPRUDENCE?**

*The question arising here is what constitutes a deprivation of liberty consistent with the concept of seizure sufficient to satisfy the fifth element of a malicious prosecution case brought under Section 1983.* Plaintiffs maintain that the circumstances of their arrest alone, but certainly combined with additional post-arraignment restrictions placed upon them, exceed the standards defining what constitutes a Constitutional seizure for purposes of Section 1983. They base their contention on the holdings in Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998). The Commonwealth maintains that the plaintiffs' arrest, incarceration and post-custodial

3

restrictions combined do not satisfy that standard. They base their contention on dicta set forth in DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005) as applied in Benard v. Washington Cnty., 465 F. Supp. 2d 461 (W.D. Pa. 2006)

The Plaintiffs succeed in their argument that they have met the pleading standard applicable to Section 1983 malicious prosecution claims requiring a showing of a Fourth Amendment "seizure" in addition to the common law elements of that claim (See Gallo, supra. 161 F.3d at 222) because they were arrested, handcuffed, photographed, fingerprinted and incarcerated. Their detainment in the manner enforced against them is sufficient as a matter of law to meet the Fourth Amendment seizure standard satisfying the fifth element of the malicious prosecution cause they bring against the defendant. The Defendant cannot succeed in her contention that the Plaintiffs failed to meet the Fourth Amendment seizure standard because having been arrested and incarcerated the Plaintiffs are not required to make some threshold showing of circumstances revolving around pretrial custody *and* non-custodial events as in DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005), when they have, in fact, been arrested and incarcerated..

The distinction between arrest and incarceration on the one hand and de minimus forms of custody followed by burdensome non-custodial restrictions on the other may seem obvious, but those distinctions have become blurred by misunderstandings in the creation and interpretation of standards establishing what constitutes the "seizure" element in a Section 1983 case in this Federal Circuit. Examination of case law establishing those standards is thus appropriate. .

   1. ***Gallo v. City of Philadelphia,* 161 F.3d 217, 222 (3d Cir. 1998).**

In Gallo v. City of Philadelphia, the Section 1983 plaintiff, James Gallo, was indicted by

a federal grand jury on several federal felony counts. Gallo v. City of Philadelphia, 161 F.3d 217, 219 (3d Cir. 1998), as amended (Dec. 7, 1998).  Subsequently, Gallo was arraigned in federal court on those charges, and was released on a $10,000 personal recognizance bond.  Id.  ***"He was never arrested, detained, or handcuffed."*** Id. (emphasis added).  As a condition of his release, the court prohibited Gallo from traveling beyond New Jersey and Pennsylvania and instructed him to contact Pretrial Services weekly.  Id.  These restrictions remained in effect through Gallo's trial, a period of over eight months from when the court imposed its restrictions.  Gallo was subsequently acquitted of all charges and thereafter brought suit against his federal agent accusers for malicious prosecution.

A cause of action for malicious prosecution under 42 U.S.C. § 1983 requires a plaintiff to allege the traditional elements of that claim including prosecution without probable cause; with malice; and favorable outcome in the underlying criminal matter  See, e.g. Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993) In addition, after the Supreme Court's decision in Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114, she must show that she suffered "some deprivation of liberty consistent with the concept of 'seizure.'"  Id. 161 F.3d at, 222 (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir.1995).  The Gallo court set forth the benchmarks for determining when a Constitutional seizure meeting the requirements of Section 1983 may be attained.  Invoking Supreme Court case law, the Gallo court held that "a seizure is a show of authority that restrains the liberty of a citizen . . . or a 'government termination of freedom of movement intentionally applied.'"  Id.161 F.3d at  223.(citing California v. Hodari D., 499 U.S. 621, 625–27, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991 Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S. Ct. 1708, 1715, 140 L. Ed. 2d 1043 (1998))

5

The defendant challenged Gallo's pleadings, arguing that Gallo had inadequately established that he was subjected to a Fourth Amendment seizure ***absent arrest***. Noting that the Courts of the Third Circuit take a "broad approach regarding bringing malicious prosecution claims in federal court " Id. 161 F.3d at 223-24.the Gallo court looked to the reasoning the Second Circuit's <u>Singer</u> opinion as a basis for employing that approach in a "seizure" analysis:: Borrowing from <u>Singer</u> the <u>Gallo</u> court considered factors that might at a minimum establish a "seizure" for Section 1983 purposes ***<u>in the absence of arrest</u>***. The Singer court explained

> To maintain a Sec[tion] 1983 claim for malicious prosecution under the Fourth Amendment, the deprivation of liberty--the seizure--must have been effected pursuant to legal process. The essence of malicious prosecution is the perversion of proper legal procedures. Ordinarily, this legal process will be either in the form of a warrant, in which case the ***arrest itself may constitute the seizure*** . . . ***or a subsequent arraignment***, in which case ***any post-arraignment deprivations of liberty*** (such as being bound-over for trial) might satisfy this constitutional requirement.

Singer, supra. 63 F.3d at 116. (emphasis added).

Applying the <u>Singer</u> principles, the <u>Gallo</u> court likened Gallo's appearance at a preliminary hearing to an investigative detention akin to that effected by police in a so-called "Terry Stop". <u>Id,</u> 161 F.3d at 217, 223. Under <u>Terry v. Ohio,</u> 392 U.S. 1, 88 S.Ct. 1868, , 20 L.Ed.2d 889 (1968). a law enforcement officer may briefly detain an individual for investigative purposes if the officer effecting the stop has a reasonable suspicion supported by articulable facts that there may be criminal activity afoot, even if probable cause is lacking. Id. 392 U.S. at 19. A Terry detention must not be excessive in length or overly intrusive. Terry, Id. 392 U.S. at 20. Thus, the Court reasoned, in relevant part:

> When the plaintiff was obliged to go to court and answer the charges against him, ***Gallo, like the plaintiff in Terry was brought to a stop. This process may not have the feel of a seizure because it is effected by authority of the court, not by the <u>immediate threat of physical force.</u> Force, however, lies behind the court's commands as it lies behind the policeman's "Stop."*** Gallo's physical motion was subjected to authority that had the

effect of making him halt. In the present state of our law, *it is difficult to distinguish this kind of halt from the exercise of authority deemed to be a seizure in Terry*.

Id, 161 F.3d at 223 (3d Cir. 1998),(emphasis added).

Accordingly a seizure under the plain meaning applied to that term by the court in Gallo depends to a significant degree upon the magnitude of the "*force*" exerted upon a Section 1983 plaintiff and the effect that force has on the cognizable magnitude of the seizure that occurred . See also Hoddard, supra., ("A seizure occurs 'when the officer, **by means of physical force or show of authority, has in some way restrained the liberty of a citizen**.'" Hodari, 499 U.S. at 625, quoting Terry, supra.).(emphasis added). See also Johnson v. Knorr, 477 F.3d 75, 85, n.14 (3d Cir. 2007) ("[Plaintiff's]detention in the cell at the police station for approximately two days until he could "make bail, 'constitutes a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'")

Consistent with that test, the Gallo court held that a plaintiff claiming malicious prosecution and merely asserting that he "showed up in court" could not establish by itself the level of force necessary to constitute a Fourth Amendment seizure. Thus, in conformity with Singer and Third Circuit law allowing liberal interpretation of Section 1983 elements, it considered Gallo's offers of additional post-indictment restrictions that might, combined with his court appearance achieve a minimum acceptable showing what clearly amounted to a *functional equivalent of a full-blown arrest rather than merely the "immediate threat" of physical force* . It found these functional equivalents by taking into account such non-exclusive factors as the level of bail set by the court, prohibitions against travel outside the detaining jurisdiction, attendance at subsequent hearings and obligations requiring the plaintiff to report regularly to pre-trial services.

    **2.** **DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005)**

7

Some years after Gallo, a Third Circuit Court panel in DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005) employed the Gallo analysis to determine whether a Fourth Amendment seizure had occurred where the Section 1983 plaintiffs were, as in Gallo, accused of ***but not arrested*** for charges related to the low-level crime of trespass. The Court found that the circumstances plead did not meet the Gallo threshold where the plaintiffs were required only to attend pretrial hearings and trial, were set free without bail and were not subject to travel restrictions. In the course of its analysis, the DiBella court formulated one possible test for evaluating when a "seizure" occurs in a Section 1983 malicious prosecution claim stating:

> ***Pretrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure.*** [Plaintiffs] failed to state a cause of action for malicious prosecution because their attendance at trial did not qualify as a Fourth Amendment seizure.

Id., 407 F.3d at 603. (emphasis added).

In its analysis of the test at issue, however, the DeBella court erroneously summarized the facts in Gallo. It mistakenly stated that "[t]he plaintiff in Gallo was ***arrested*** for arson." Id, 407 F.3d at 602. (emphasis added). As the Gallo court itself emphatically noted ***the plaintiff in Gallo was never arrested***. Rather, under the holding ***in Gallo, it is clear that a full-blow arrest may itself establish a Constitutional seizure in a 1983 malicious prosecution context without resort to a showing of other, less physically intrusive circumstances of detention, at least where it has been determined that there was a sufficient use of some legally cognizable " force" involved in the detention other than arrest.***

Accordingly, giving the DeBella court's formulation its widest possible berth without bringing it into conflict with the central purpose of Gallo, the DeBella test cannot properly serve as basis for evaluating circumstances where, as here, accepting as true the facts plead, the custody at issue ***was effected by an arrest in addition to a subsequent incarceration where each***

8

***was accompanied by the obvious use of considerable force depriving Plaintiffs absolutely of their freedom of movement for the better part of a day.*** .  At best, the scope of the DeBella court's formulation can only properly be extended to situations where the "pretrial custody" element ***involves a teechnical arrest*** closely resembling a Terry stop; that is, a temporary detention where the arrestee is not "free to leave" and the detention is ***unaccompanied by indicia of the use physical force or threat of the use of physical force.***  See, Gallo, supra...

### 3. *Benard v. Washington Cnty.*, 465 F. Supp. 2d 461 (W.D. Pa. 2006)

Clearly, situations arise where the dividing line between an arrest and a Terry stop may be cloudy.  It is to these situations where DeBella's analysis is best confined, if the Gallo court's underlying rationale for viewing police conduct is to have any meaning.   One such case is Benard v. Washington Cnty., 465 F. Supp. 2d 461 (W.D. Pa. 2006), cited by the defendant for the implicit but incorrect proposition that ***any*** arrest regardless of its physical intrusiveness satisfies only the first prong of the DeBella test  and thus requires under all such circumstances that the plaintiff plead "onerous" post-custodial circumstances as well in order to satisfy the second prong before a Fourth Amendment seizure will be found.

The allegations of the Amended Complaint  in Benard :stated that the plaintiff, was employed as a sheriff's deputy where among her duties she was required to search visitors as they entered the county courthouse and that while searching a co-defendant in the plaintiff's malicious prosecution case, the defendant's ten year old son told her that Benard had stolen money from her purse. Id 465 F. Supp. 2d at  465. (A copy of the Amended Complaint in Benard is attached hereto as Exhibit "A").  According to the district court, as a result of the incident the County and City co-defendants, initiated an investigation into the matter.  Benard was thereafter suspended without pay for refusing to participate in the investigation.  Other

officials, later co-defendants, "reviewed the matter with [the] District Attorney . . .*who refused to recommend that an arrest be made*; [and] that nonetheless, the Sheriff of Washington County and its police department filed charges against the plaintiff. 465 F. Supp. 2d at, 465-66. The plaintiff's complaint averred nonetheless that she was arrested and later released, but the Complaint gives no details of these supposed custodial events. (Ex. 1 at ¶ 52).

Evaluating the seizure element in Benard's malicious prosecution action, ***the District Court accepted the <u>DiBella</u> court's erroneous factual finding that the Plaintiff in <u>Gallo</u> had been arrested***. Id. 465 F. Supp. 2d at 469. The court then evidently accepting the "arrest" as a first prong factor (as the only "pretrial custody" element of the DiBella analysis.nvolved in that case) Id. It then went on to evaluate the "noncustodial" elements plead to determine whether they met the <u>DiBella</u> threshold and found that they did not. Id. Thus, in <u>Benard,</u> an "arrest" in the context defined was insufficient alone to constitute a "seizure" even in combination with other proferred "onerous" restrictions.

The <u>Benard</u> court's application of <u>DiBella</u> is an inappropriate example by which to factor an "arrest" into the totality of circumstances constituting a Fourth Amendment seizure in all Section 1983 malicious prosecution cases . Clearly, where an "arrest" is temporarily and undertaken with minimal force it may be likened more to a Terry stop than an arrest. See United States v. Sharpe, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575, 84 L. Ed. 2d 605 (U.S.S.C. 1985) (commenting that varying standards often "create difficult line-drawing problems in distinguishing an investigative stop from a de facto arrest.") The Benard court's analysis <u>may</u> well have been correct, because the plaintiff alleged that she had been arrested but included no particular facts concerning the level or duration of restraint she experienced.

4. **The Practical Application of Gallo, DeBella and Benard To The Facts Plead In Plaintiffs' First Amended Complaint**

10

The Defendant's use of Benard as example of the appropriate manner in which to apply a DiBella analysis erroneously assumes that **_all_** arrests must be regarded as satisfying only the "pretrial custody" prong of that test, no matter how fleeting or how draconian in nature the arrest may be. Clearly, such an analysis violates the letter and spirit of Gallo, not to mention the authorities to which it looked to establish the existence of a Fourth Amendment seizure. . It simply makes no sense to say that a Section1983 plaintiff who was, like the Plaintiffs here, arrested and incarcerated with accompanying "force" must still come forth with compelling non-custodial circumstances to establish the Plaintiff's situation as a proper seizure.

A review of the facts as plead in the First Amended Complaint clearly plead circumstances that the plaintiffs were subjected to significant force in a manner consistent with the Gallo court's use of that word taking it out of the ambit of a Terry stop into the realm of a full-blown arrest and beyond. Both plaintiffs were handcuffed, photographed, fingerprinted, jailed, chained to fixtures in their cell awaiting a preliminary arraignment and spent significant time awaiting their preliminary arraignments under these conditions before they were released that day. By any measure of the term, these acts establish a seizure of Fourth Amendment magnitude.

Even if DiBella's formulation were applied, the Plaintiffs have still met the requisite showing. Onerous circumstances of post-custodial restrictions include the magisterial court's imposition of travel restrictions *prohibiting plaintiffs to leave Pennsylvania without permission until charges were dismissed over a year later, the requirement that the Plaintiffs attend a preliminary hearing and their required attendance at "numerous additional hearings" in the Court of Common Pleas* meet their second-prong burden under DiBella. Cf. Gallo supra. 161 F.3d at 219. (plaintiff's travel confined to *Pennsylvania and New Jersey for eight months*);

11

Johnson, supra., 477 F.3d at 86 ("[Plaintiff's] pretrial custody for approximately two days, the requirement that he make bail, and the fact that he was *ordered to return in approximately six weeks for a preliminary hearing* constitute a deprivation of liberty consistent with the concept of seizure.") (internal quotation marks and brackets omitted); Henderson v. City of Philadelphia, 853 F. Supp. 2d 514, 520 (E.D. Pa. 2012) ("[Plaintiff's] *single day of pretrial custody* after criminal proceedings were initiated, the requirement that she post bail, and the fact that she was *ordered to attend a preliminary hearing* constitute a deprivation of liberty consistent with the concept of a seizure under the Fourth Amendment.")

### B. PLAINTIFFS WITHDRAW THEIR STATE MALICIOUS PROSECUTION CLAIMS AGAINST THE DEFENDANT.

WHEREFORE, Plaintiffs, Catherine Roberts and Kristen Clements respectfully request that the Defendant, Joanne Dragotta, motion to dismiss be denied to the extent that it asks for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim pursuant to 42 U.S.C. § 1983.

SCHROM, SHAFFER & BOTEL,

/s/ Gerard K. Schrom
Gerard K. Schrom, Esquire
E.D. Pa. I.D. No. (GKS2134)

/s/ Neil E. Botel
Neil E. Botel, Esquire
E.D. Pa. I.D. No. (NEB0703)

Attorneys for Plaintiffs
Catherine Roberts and
Kristen Clements