**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CATHERINE ROBERTS | ) | |
| AND | ) | |
| KRISTEN CLEMENTS | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No.: 14-3890 |
| v. | ) | |
| | ) | |
| CAESAR'S ENTERTAINMENT, INC. | ) | JURY TRIAL DEMANDED |
| D/B/A HARRAH'S PHILADELPHIA, et al. | ) | |
| | ) | |
| Defendants. | ) | |

<u>**PLAINTIFFS', CATHERINE ROBERTS AND KRISTEN CLEMENTS, RESPONSE IN
OPPOSITION TO DEFENDANT, CAESAR'S ENTERTAINMENT CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**</u>

 Plaintiffs, Catherine Roberts and Kristen Clements, by and through their counsel of

record, Schrom, Shaffer & Botel, hereby submit the following memorandum of law in opposition

the Defendant, Joanne Dragotta's, Motion to Dismiss Plaintiffs' First Amended Complaint and

aver as follows:

I. <u>**PRELIMINARY STATEMENT**</u>

 Plaintiffs' claims should not be dismissed because this Court has jurisdiction to hear

them. Under the National Labor Relations Act ("NLRA"), Plaintiffs' claims fall within

compelling state-interest exceptions to preemption. Further, National Labor Relations Board

("NLRB") is not the exclusive forum for the adjudication of these claims. Under the Labor

Management Relations Act ("LMRA") Plaintiffs' state actions are not pre-empted under Section

301 because the terms of the parties' Collective Bargaining Agreement ("CBA") do not

explicitly or by reference address the use of casino-generated "complimentaries" or "comps" as

credits capable of conversion into cash or cash-equivalents to cover restaurant staff gratuities.

Finally, Plaintiffs' First Amended Complaint is a "plausible" account of the facts establishing their claims for relief.

## II. RELEVANT FACTS

Plaintiffs, Catherine Roberts and Kristen Clements, former wait staff employees at Harrah's Philadelphia Casino ("Harrah's" or the "Casino") allege in their First Amended Complaint that representatives of defendant, Caesar's Entertainment Corporation ("Caesar's"), procured Plaintiffs' arrests and subsequent civil and criminal prosecutions maliciously and without probable cause. They allege that Harrah's launched a bogus investigation of Plaintiffs retention of gratuities paid out of Casino created "complimentaries" or "comps," given to so-called "high roller" patrons as free spending credits. As a result of the investigation, Plaintiffs were arrested and charged as well as brought before the Gaming Control Board on violations stemming from the incident; however, the charges have since been dismissed at both the Gaming Control Board and Common Pleas court.

Prior to the investigation and subsequent arrest, Plaintiffs were members of Unite Here Local 54 and, with union facilitation, attempted to negotiate with Defendants regarding wages and break times. Amd. Cplt. ¶ 26. Plaintiffs allege that the investigation and subsequent arrest was brought about, in part, as retribution for Plaintiffs attempting to engage in those negotiations with Defendants. Amd. Cplt. ¶¶ 130, 140.

Casino management, specifically Dan Alecia with knowledge and approval of Harrah's General Manager, Ron Baumann, directed Mary Harper, Harrah's supervisor of security to look into the Cove wait staff's gratuities practices paid from "comps" who had participated in the aforementioned negotiation meeting. (Amd. Cplt. ¶¶ 29, 51) Based on a limited investigation, Ms. Harper prepared an incomplete, inaccurate, and false report. (Amd. Cplt. ¶¶ 53, 54, 55)

Based on this incomplete, inaccurate, and false report, Defendants had the Plaintiffs arrested and took active roles in the their civil and criminal prosecutions. Ms. Roberts was arrested and prosecuted for receiving stolen property in the amount of $627.77. (Amd. Cplt. ¶ 61). Ms. Clements was arrest for theft of moveable property in violation of 18 Pa.C.S.A. § 3921(a), receiving stolen property in violation of 18 Pa.C.S.A. § 3825(a); and forgery in violation of 18 Pa.C.S.A. § 4101(a)(1). (Amd. Cplt. ¶ 62). Plaintiffs were processed through the criminal justice system. They were arrested, fingerprinted, handcuffed, and detained in a local city jail awaiting a preliminary arraignment. (Amd. Cplt. ¶¶ 64, 65). Plaintiffs were subsequently charged with violations of Pennsylvania Gaming Control Board regulations and forced to surrender their non-gaming licenses. Thereafter, they were by law unable to work in the gaming industry in any capacity throughout the United States. (Amd. Cplt. ¶¶ 80, 81).

Following a full presentation of the acts and omissions of Harrah's representatives to the Pennsylvania Court of Common Pleas, the criminal charges against the Plaintiffs were dismissed. In February of 2013, the Gaming Control Board withdrew all charges against Plaintiffs. (Amd. Cplt. ¶ 117). In October 2013, the Court of Common Pleas of Delaware County, Pennsylvania finding no probable cause supported the criminal charges against them dismissed all charges against the Plaintiffs. (Amd. Cplt. ¶ 119).

Plaintiffs filed the civil suit now at issue against Harrah's, alleging claims of malicious prosecution and wrongful use of civil proceeding. Defendants now seek to dismiss Plaintiffs' complaint, arguing that the Plaintiffs suit is preempted by the terms of Sections 7 and 8 of the National Relations Act 29 U.S.C. §151 et seq. and Section 301 of the Labor Relations Management Act, 29 U.S.C. §158(a).

## III.  MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

In a motion to dismiss for failure to state a claim, all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor. Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989) The Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief. Port Authority v. Arcadian Corp., 189 F.3d 305, 311 (3d Cir.1999).

In order to withstand a motion to dismiss pursuant to 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).The plausibility standard is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard is not a "probability requirement," but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

## III.  QUESTIONS PRESENTED

**A.  WHETHER THE PLAINTIFFS' CLAIMS  CONSTITUTE EXCEPTIONS TO THE GARMON PRE-EMPTION RULE PRECLUDING THEIR DISMISSAL UNDER SECTIONS 7 AND 8 OF THE NLRA?**

**B.  WHETHER DEFENDANT HAS FAILED TO IDENTIFY ANY PROVISION OF THE CBA PRE-EMPTING PLAINTIFFS' CLAIMS UNDER THE TERMS SECTION 301 OF THE LMRA?**

**C.  WHETHER PLAINTIFFS' COMPLAINT ADEQUATELY PLEADS PLAUSIBLE CLAIMS CONSTITUTING CAUSES OF ACTION IN MALICIOUS PROSECUTION AND WRONGFUL USE OF CIVIL PROCEEDNGS.**

**SUGGESTED ANSWERS AS TO EACH IN THE AFFIRMATIVE.**

## IV. ANALYSIS

### A. THE PLAINTIFFS' CLAIMS CONSTITUTE EXCEPTIONS TO THE GARMON PRE-EMPTION RULE PRECLUDING THEIR DISMISSAL UNDER SECTIONS 7 AND 8 OF THE NLRA.

#### 1. Pennsylvania's substantial interest in deterring the filing of baseless litigation in its courts.

The National Labor Relations Act (the "NLRA" or "Act") establishes a "centralized administration of specially designed procedures . . . to obtain uniform application of its substantive rules" in order to avoid "diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies." San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 242-43, 79 S. Ct. 773, 778, 3 L. Ed. 2d 775 (1959). To maintain uniformity the Supreme Court has read into that Act the principle that federal supremacy works a pre-emptive effect on state law legal claims that interfere with the National Labor Relations Board's power to set uniform standards of conduct in the review and resolution of labor disputes. Id.

Important exceptions to Garmon pre-emption exist where state law actions in tort touch interests "deeply rooted in local feeling and responsibility" Id., 359 U.S. at 244, 79 S.Ct. at, 779, 3 L.Ed.2d 775 (1959). Chief among the principles governing exemptions from the pre-emptive effect of the NLRA consistent with Garmon principles are those rooted in tortious activity *motivated by malice and malicious use of state court process* to impair rights also protected by the NLRA and potentially reviewable under Sections 7 and 8 by the National Labor Relations Board (the "Board" or "NLRB"). See Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 747, 103 S. Ct. 2161, 2172, 76 L. Ed. 2d 277 (1983).

In Bill Johnson's, the United States Supreme Court considered the pre-emptive effect of

the NLRA upon a suit brought by a restaurant owner against one of its former employees for slander and criminal trespass. After the employer filed its state actions, the employee filed a grievance with the NLRB claiming that the suit was a form of retaliation against legitimate union activity covered by the NLRA. The NLRB agreed with the employee and issued an order directing the restaurant to withdraw its lawsuit. The Supreme Court ultimately responded that the Board had exceeded its power in doing so. The Court explained, in relevant part:

> The filing of a meritorious law suit, even for a retaliatory motive, is not an unfair labor practice. If judgment goes against the employer in the state court, however, or if his suit is withdrawn or is otherwise shown to be without merit, the employer has had its day in court, the interest of the state in providing a forum for its citizens has been vindicated and **the Board may <u>then</u> proceed to adjudicate the § 8(a)(1) and 8(a)(4) unfair labor practice case.** The employer's suit having proved unmeritorious, the Board would be warranted in taking that fact into account in determining whether the suit had been filed in retaliation for the exercise of the employees' § 7 rights.

Id.., 461 U.S. at 747, 103 S. Ct. at 2172. In an important footnote, the Court added:

> The Board's power to take such action ***<u>is not limited by the availability to injured employees of a state-court malicious prosecution or other action</u>***. ***Dual remedies are appropriate because <u>a State has a substantial interest in deterring the filing of baseless litigation in its courts</u>***, and the Federal Government has an equally strong interest in enforcing the federal labor laws.

Id. at note 14. (emphasis added).

The actions brought here by plaintiffs in state court actions for malicious prosecution and wrongful use of civil proceedings fall squarely within the exemptions to NLRA pre-emption principles contemplated by the <u>Bill Johnson's</u> and <u>Garmon</u> courts. Plaintiff's claims touch upon matters deeply rooted in issues of local concern, including a ***<u>state's "substantial interest in deterring the filing of baseless litigation in its courts</u>***." The baseless litigation spurred by Harrah's alleged fabricated evidence resulted in legal actions instituted against Plaintiffs in the Pennsylvania criminal courts and with the Pennsylvania Gaming Commission. The charges Harrah's promoted in these venues were ultimately "shown to be without merit". Thus, under

<u>Bill Johnson's</u> rationale, plaintiffs are now afforded the opportunity to institute actions in state court based upon the claim that their employer misused the legal machinery of the State for self-serving and malicious purposes.

**2.** <u>**Pennsylvania's substantial interest in preventing harm to reputation, physical discomfort, interruption of business, mental anguish, humiliation and injury to feelings of its citizens.**</u>

Consistent with <u>Garmon</u> principles, the United States Supreme Court has from time to time exempted from the NLRA's pre-emption doctrine cases brought under state law where elements of the legal causes of action under review involve ***actual or potential violence, or mental or physical hardship, inflicted upon one party to labor dispute by another***. For instance, "[w]here a party to a labor dispute circulates false and defamatory statements during a union organizing campaign, the court has jurisdiction to apply state remedies ***if the complainant pleads and proves that the statements <u>were made with malice and injured him</u>***." <u>Linn</u>, supra. 383 U.S.at 55, 86 S. Ct. at 659. Equally, the NLRA does not preempt a state action where the plaintiff has alleged that "[a party to a labor dispute] ha[s] intentionally engaged in '***<u>outrageous conduct, threats, intimidation</u>, and words' which cause[] [the plaintiff] to suffer 'grievous mental and emotional distress</u> as well as <u>great physical damage</u>***.'" <u>Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25</u>, 430 U.S. 290, 301, 97 S. Ct. 1056, 1064, 51 L. Ed. 2d 338 (1977). Exceptions are also commonly recognized where interests of litigants involved in ***state tort actions seek to recover for physical damage to property by violence or to prevent such damage by precluding recourse to violence through injunctive relief***. See <u>Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters</u>, 436 U.S. 180, 207, 98 S. Ct. 1745, 1763, 56 L. Ed. 2d 209 (1978). (holding that state injunctive relief in state court trespass action is available to employers where forcing employer to proceed under NLRA would require

employer to elect self-help to remove union picketers from its property).

An employer who challenges state actions controlled by the Supreme Court's exemptions to the NLRA pre-emption doctrine involving such elements "***runs headlong into the <u>basic rationale</u> of <u>Linn</u>, <u>Farmer</u>, and other cases in which we declined to infer a congressional intent to ignore the substantial State interest '<u>in protecting the health and well-being of its citizens</u>.***'" <u>Bill Johnson's</u>, supra. 461 U.S. at 742, 103 S. Ct.at 2169. The principles guiding the <u>Linn, Farmer and Sears</u> courts, must by extension also apply to suits brought under state law for malicious prosecution and wrongful use of civil proceedings.

The elements of a Pennsylvania malicious prosecution case, like those causes at issue in <u>Linn</u>, <u>Farmer</u> and those implicated by the holding in <u>Bill Johnson's</u> involve deliberate and malicious conduct by employers seeking to bend unionized employees to their will by overt acts of physical or mental coercion. Damages arising from malicious prosecution include effects of tortious behavior held in <u>Linn</u> and <u>Farmer</u> to be the basis for exemptions to NLRA pre-emption based upon "deeply rooted" state law concerns. These effects under Pennsylvania law potentially include "plaintiff's actual expenses in defending himself, compensation for loss of liberty or time**, harm to reputation, physical discomfort, interruption of business, mental anguish, humiliation and injury to feelings.**" <u>Shelton v. Evans</u>, 292 Pa. Super. 228, 233, 437 A.2d 18, 21 (1981) Thus, the legal elements and recoverable damages for injuries suffered in malicious prosecution cases are precisely those cited by the United States Supreme Court as features of actions "deeply rooted in local feeling and responsibility" requiring their exclusion from the compass of the NLRA's Sections 7 and 8 pre-emptions.

In <u>Radcliffe v. Rainbow Construction Co.</u>, 254 F.3d 772, 784-85 (9th Cir. 2001)., the Ninth Circuit has squarely addressed the <u>Garmon</u> exemption as it applies to malicious

prosecution based upon exceptions to that rule found in <u>Farmer</u>, supra. and <u>Linn</u>, supra. In

<u>Radcliffe</u>, following complaints to a local prosecutor by a union contractor, several union

officials were arrested, jailed and prosecuted for criminal trespass after they made several

unannounced visits to construction sites on public school premises. After their acquittals, the

union officials, as private litigants, brought causes against the employer in California state court

for false arrest, false imprisonment and malicious prosecution. The employer sought dismissal

of those claims as pre-empted by Sections 7 and 8 of the NLRA The Radcliffe court squarely

addressed the employer's NLRA pre-emption defense stating:

> ***We conclude that the state-law torts of false arrest, false imprisonment, and malicious
> prosecution arising out of such a trespass arrest are similarly not preempted by the
> NLRA. Freedom of citizens from false arrest, false imprisonment, and malicious
> prosecution "touch[ ] interests so deeply rooted in local feeling and responsibility that,
> in the absence of compelling congressional direction, we could not infer that Congress
> had deprived the States of power to act.***" Garmon, 359 U.S. at 243-44. Thus false arrest,
> false imprisonment, and malicious prosecution are ***similar to torts of threatened
> violence, traditionally held not to be preempted***, see Automobile Workers v. Russell, 356
> U.S. 634 (1958), or ***intentional infliction of emotional distress, and defamation***, both of
> which the Supreme Court has held to be excepted from Garmon's preemption rule even
> though they involve conduct arguably protected or prohibited by the NLRA. See <u>Farmer
> v. United Brotherhood of Carpenters, Local 25</u>, 430 U.S. 290 (1977) (intentional
> infliction); <u>Linn v. United Plant Guard Workers, Local 114</u>, 383 U.S. 53 (1966)
> (defamation).

<u>Radcliffe v. Rainbow Construction Co</u>., 254 F.3d 772, 784-85 (9th Cir. 2001), cert. den'd.

534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001).

### 3. <u>Pennsylvania's Substantial Interest In Regulating The Gaming Industry.</u>

Pennsylvania also has a substantial interest in regulating and protecting the integrity of

gaming industry in Pennsylvania. Considering the policy surrounding regulation of pre-casino

gambling the Commonwealth Court of Pennsylvania, echoing operative language in Garmon's

pre-emption doctrine, has observed:

> Much like the sale of liquor or firearms, horse racing in this Commonwealth is illegal outside of the limited geographic and chronologic sphere sanctioned by the Commission and ***regulation of horse racing and its incident gambling is <u>deeply rooted</u> in the police power of the Commonwealth***.

<u>Lanchester v. Pennsylvania State Horse Racing Comm'n</u>, 16 Pa. Cmwlth. 85, 93, 325 A.2d 648, 653 (1974). A modern view of this rationale is more fully set forth in the legislative intent provisions of Pennsylvania's "Race Horse Development and Gaming Act", 4 Pa.C.S.A. § 1102. ("The primary objective of this part to which all other objectives and purposes are secondary is to protect the public through the regulation and policing of all activities involving gaming and practices . . .").

      Recent history demonstrates Pennsylvania's continuing and highly visible interest in regulating casino gambling and its accompanying vendor functions.[1] Though gambling only became legal in Pennsylvania in 2004, total gambling revenue in Pennsylvania today is second only to that of Nevada.[2] In fact, the entire United States "looks to Pennsylvania as a role model in casino industry development."[3] The Pennsylvania Gaming Control Board oversees the 12 casinos in Pennsylvania and mandates a Pennsylvania State Police presence inside the casinos.[4] It is estimated that 144 members of the state police at a cost of $22.5 million annually (reimbursed by the casinos) staff the casinos.[5] In the last 10 years, that is $225 million dollars spent to ensure the integrity of gaming in Pennsylvania.

      Because the conduct of the casino in this context touches interests deeply rooted in

---

[1] <u>Pennsylvania State Police, Gaming Control Board Announce Agreement to Protect Integrity of Gaming</u>, at http://gamingcontrolboard.pa.gov (Dec. 15, 2005).

[2] <u>Gaming Control Board Suggests Changes at Casinos Regulations</u>, http://www. onlinecasinoselite.com/blog/gambling-Pennsylvania-governing-rules/ (May 28, 2014).

[3] Id.

[4] Id.

[5] <u>State shouldn't be providing casino security</u>, http://www.thecourierexpress.com/opinion/ our_opinion/article51bce6ce-5b56-11e3-8724-0019bb2963f4.html?mode=jqm (December 2013).

"local" concern, pre-emption of claims relating to the proper use of law enforcement and prosecutorial practices and those brought before the Gaming Control Board growing out of gaming enforcement policies should not be preempted under the NLRA.

### 4. NLRA Pre-Emption Principles and Identity of State and NLRA Claims

Moreover, in evaluating the merits of a lawsuit brought in tort against an employer, the Garmon analysis also excludes from pre-emption state law claims against an employer where the controversy presented by the employee to the state court "is not identical to that which could be presented to the NLRB." McCandless v. Trans Penn Wax Corp., 840 F. Supp. 371, 373 (W.D. Pa. 1993) citing Belknap, Inc. v. Hale, 463 U.S. 491, 509-10, 103 S. Ct. 3172, 3182-83, 77 L. Ed. 2d 798 (1983)  The issues before the state court and the Board are not identical in this matter.  In the cause brought by Plaintiffs for malicious prosecution in a state court action, the Court must decide whether Harrah's actions caused the plaintiffs to be ***prosecuted without probable cause and with malice***.

If the plaintiffs had filed a charge with the NLRB, the Board would have had no practical reason to consider whether Harrah's alleged unfair labor practices for ***firing*** plaintiffs for theft was undertaken with the intention of securing their arrests and prosecutions.  Any such action brought in an NRLA context would focus on whether the employer had interfered with the plaintiffs' Section 7 rights, ***regardless of whether there had been an arrest, imprisonment or prosecution***.  See Radcliffe, supra., 254 F.3d at 786.  Elements of "probable cause" and "malice" involved in the consequences of any subsequent arrest, prosecution or the institution of state torts would have been entirely peripheral to any concrete finding of a Section 7 rights violation because the resolution of issues of probable cause and malice were ultimately mixed questions of law and fact under state law capable of resolution only by courts or other tribunals

of competent ***state*** jurisdiction.[6]

### 5. The Holding Of The Hawaii Supreme Court In *Chung v. McCabe Hamilton & Renny Co.*, Do Not Apply To The Facts In This Matter.

Defendants cite the Hawaii Supreme Court's determination in Chung v.McCabe Hamilton & Renny Co., Ltd., 128 P.3d 833, 109 Hawaii 520 (2006) for the proposition that abuse of process and malicious prosecution claims present a "realistic risk of interference with the [NLRB's] primary jurisdiction to enforce the statutory prohibition against unfair labor practices." Defendant's Brief at 7.

The plaintiff in Chung, a union shop steward, became embroiled in disagreements with management about the terms of work assignments governed by a CBA. McCabe Hamilton & Renny Co., Ltd. v. Chung, 43 P.3d 244-248, 246, 98 Hawaii App. 107, 109-111 (2002).[7] The plaintiff brought state charges of abuse of process and malicious prosecution, among others, against management originating from what Chung claimed were in his view management's improper attempts to obtain restraining orders against him in state court prohibiting him from entering onto company property during the pendency of a labor dispute. Chung, supra. 128 P.3d at 836, 844, 109 Hawaii at 523, 531. ***Chung was not, however, arrested or sued civilly***. McCabe, supra. 43 P.3d at 248, 246, 98 Hawaii App. 107, at 111. Rather,Chung claimed the restraining orders, which forbade his entry onto company property and ultimately expired, were the result of management's false allegations that he had threatened coworkers sympathetic to management

---

[6] Moreover, to the extent the pleadings might be interpreted to allege that Harrah's sought to discourage union members or the union itself from asserting interference with bargaining rights or for the purpose of discouraging membership in Plaintiff's union, such allegations are not justiciable here because neither the union nor any of its present members is a party to this action. See N.L.R.B. v. Pincus Bros.-Maxwell, 620 F.2d 367, 391 (3d Cir. 1980) (noting that "[u]nfair labor practice charges are not fungible.").

[7] The Hawaii Supreme Court's Chung decision incorporates by reference the facts set forth in the cited Hawaii appellate court's prior McCabe opinion.

with violence. McCabe, supra. 43 P.3d at 240, 246, 98 Hawaii App. at 112. Chung claimed that

management's efforts to obtain restraining orders and the accusations accompanying them were

*retaliatory* in nature. Chung, supra. 128 P.3d at 838, 109 Hawaii at 525.

Contrary to Defendant's characterization of the State Supreme Court's holding , *the*

*Chung court did not reject the notion that malicious use of state process could be the basis for*

*proper actions in state court.  Rather, the court held only that Chung's state tort claims were*

*barred because they were substantially identical to those he could have asserted under the*

*NLRA*. Id, 128 P.3d at 842-843, 109 Hawaii at 530. The Court found that Chung's claims

involving what he asserted were actions motivated by his employer's retaliatory animus inhibited

his ability to effectively discharge his duties as a shop steward. Id. 128 P.3d at 845, 109 Hawaii

at 532. The Hawaii court held that the charges of "malicious prosecution" at issue in that matter

more than arguably arose directly from events which occurred during the pendency of the

outcome of a labor-management dispute and affected rights he possessed under the NLRA to by

" exercise of union duties", and those of his employment, clearly falling within the competence

of a the NLRB to resolve.  Id, 128 P.3d at 842-843, 109 Hawaii at 530.

By clear contrast, the retaliatory motives the Plaintiffs have alleged here to have

motivated Harrah's do not relate, as averred in the Complaint, to the protections afforded them

under the Act.  Plaintiffs have not pleaded any actions in this matter the elements of which relate

to protections afforded them under a CBA or Section 7 and 8 rights relating to retention of their

employment, discharge of their employment duties or rights to engage in collective bargaining

under the terms of the CBA.  Rather, the plaintiffs have alleged that Harrah's acted with

retaliatory animus whose effects led not, *as pleaded*, to their dismissal per se or to other "on-the-

job" measures designed to make their work lives and union affiliations problematic, but *to their*

13

*arrests and prosecutions*.  As such, the "retaliation" at issue in this matter is asserted as proof of the element of malice in Plaintiffs' state claims.  By contrast Chung's claims called directly into question employer activities prohibited by the NLRA.  The element of malice does not figure into the resolution of Chung's NLRA claims.

### B. DEFENDANT HAS FAILED TO IDENTIFY ANY PROVISION OF THE CBA PRE-EMPTING PLAINTIFFS' CLAIMS UNDER THE TERMS  SECTION 301 OF THE LMRA?

#### 1. LMRA Section 301 Pre-emption.

##### a. Section 301 Pre-emption Does Not Apply Because The CBA Does Not Prohibit Per Se The Conversion of "Comps" Into Gratuities

Defendant claims that Plaintiff's actions are barred by Section 301 of the Labor Management Relations Act (LMRA) because the Collective Bargaining Agreement (CBA) permits Harrah's to "discharge" an employee who "fail[s] to obtain and/or maintain a [Gaming Control Board ]issued license or to otherwise conform to the above and the rules and regulations promulgated thereunder[.]" (Def. Mem. at 10-11).  The Defendant's agents claimed that Plaintiffs' activities constituted theft of casino property and forgery giving them no choice but to discharge them and report their subsequent arrests to the Gaming Control Board.

To say that Defendant's agents were merely doing what the law required of it assumes that there *was* in fact something that the law required them to do.  The problem with Defendant's argument is that Plaintiffs did not engage in any behavior prohibited by the CBA which if proved, constituted crimes or grounds for revocation of Plaintiffs' state non-gaming licenses.  No term in the CBA to which the Defendant has pointed prohibited the Plaintiffs from treating casino-generated "complimentaries" or "comps" as credits capable of conversion into cash or cash-equivalents to cover wait staff gratuities.  No term in the CBA to which the Defendant points prohibits restaurant staff from endorsing restaurant receipts for patrons who give them

14

permission to do so or with proper authorization from supervisory staff. No term in the CBA to which the Defendant has pointed prohibited Plaintiffs from engaging in activities that facilitate the sharing and distribution among restaurant wait staff at the end of a work shift.

In the absence of such internal regulations properly drawn, only state courts of law and the Gaming Control Board and not Casino management or police can, as an initial matter, competently pass on the substance of such issues. Since the Defendant has not pointed to any term in the CBA establishing rules governing the use of casino "comps" as gratuities, either explicitly or through incorporation by reference, there is no basis for its present assertion that Plaintiffs stole anything or that the methods they used to acquire and share gratuity money among themselves was illegal. On the contrary, the First Amended Complaint avers that the Defendant's agents knowingly and deliberately manufactured evidence of crime in order to justify the Plaintiffs' discharge.

Pennsylvania Casino Gaming Board regulations define casino generated "complimentaries" as the "personal property" of casino patrons to whom they are awarded. The Gaming Control Board regulations define a "complimentary" or "comp" as follows:

> a. any lodging, service or item, **_including a cash or noncash gift,_** which is provided **_directly or indirectly to an individual at no cost or at a reduced cost_** which is not generally available to the public. . . .
> c. The term includes points that are awarded to patrons of a licensed facility who are **_members of the licensed facility's player rewards program_** and credits for promotional slots play.

58 Pa. Code § 401a.3 (emphasis added). Under common-law principles a "gift" becomes the personal property of the donee once transferred to him or her by the donor and the donee has the right of disposition thereafter. See, e.g., *Perchomenko v. Klimashevsky*, 426 Pa. 260, 265, 231 A.2d 869, 871 (1967)(citations omitted)(discussing elements of transfer of property by gift). Under Gaming Commission regulations, there is no prohibition against using comps to pay

gratuities, but payments of gratuities to *gaming staff only* are explicitly limited.

A casino's prohibitions against the use of comps as gratuities to **non-gaming staff**, such as restaurant employees, could arguably obtain enforceable effect under a CBA only if a casino properly formulated rules governing their use, and only if those rules were consistent with applicable law. See 58 Pa. Code § 465a.7. ("A slot machine licensee shall develop, maintain and apply adequate internal controls over the authorization and issuance of complimentary services or items as defined in § 401a.3[.]"). The Amended Complaint alleges, and Defendant has failed in any manner to show otherwise, that Harrah's complied with Gaming Control Board regulations and formulated internal rules governing gratuity practice in its restaurants and incorporated those rules by some explicit reference to them in the CBA. (Amd. Cplt. ¶¶ 88-89). Thus, Defendant' claim that the CBA purports to dictate how its comps may be used or distributed to casino restaurant personnel bringing their claims within the ambit of Section 301 has no merit.

Defendant cites an unreported, non-precedential opinion from another federal jurisdiction premised upon New York State law as a guide to the Court's determination here. In Korthas v. Northeast Foods, Inc., 2006 U.S. Dis. LEXIS 18846 (N.D.N.Y, Feb. 27, 2006) the plaintiff, Korthas, a union employee, brought claims against his former employer and a co-workers for malicious prosecution among others, alleging that he was improperly discharged for making threats of physical violence against the co-workers and a company supervisor. The Court found as to the malicious prosecution charge, that suit could proceed against the co-worker but not against the company. It dismissed against the company. The Court reasoned that the in reporting the alleged crime to the police, the company was only doing what the CBA authorized it to do, and its behavior could not thus be characterized as malicious. Id. (See Defendant's

Exhibit "C" at 18).

In this matter, by contrast, the Plaintiffs have pleaded facts demonstrating that the Defendant did in fact undertake, or assist in undertaking, through the offices of government employees or officials, the prosecution of the Plaintiffs both criminally and civilly. Under Pennsylvania state law, a cause for malicious prosecution may be brought against a non-government party. See Shelton v. Evans, 292 Pa. Super. 228, 437 A.2d 18 (1981), Wainauskis v. Howard Johnson Co., 339 Pa. Super. 266, 488 A.2d 1117 (1985), Hayfield v. Home Depot U.S.A., Inc., 168 F. Supp. 2d 436 (E.D. Pa. 2001).

Plaintiffs have pleaded facts which if proved establish that Defendant's agents deliberately or in a grossly negligent manner reported to police and prosecutorial authorities that Plaintiffs had violated gratuity collection and distribution practices Defendant's agents claimed amounted to theft and forgery when they knew or undoubtedly should have known there was no internal casino policy addressing those issues for Harrah's restaurant employees. Additionally, Plaintiffs have alleged that Defendant reported gratuity activity as theft and forgery with manufactured evidence to state police and administrative agencies to obtain Plaintiffs' arrest and prosecution in retaliation for demands Plaintiffs had made concerning break-time and fair pay issues, and ___not___ because they were "required" to do so.

  **b. Section 301 Pre-emption Does Not Apply Because Plaintiffs' Injuries and Resulting Damages Arise From Their State Prosecutions, Not From Their Discharge From Employment.**

Plaintiff's claims for malicious prosecution and wrongful use of civil proceedings stem from the procurement, initiation or continuation of criminal and civil charges against the Accordingly, the terms of the CBA are not at issue here because "[Plaintiffs'] claim[s] do[] not flow from [their] discharge, but [rather their] criminal and civil prosecutions." Cole v. Pathmark

of Fairlawn, 672 F. Supp. 796, 802-03 (D.N.J. 1987) (holding that plaintiff's malicious prosecution claim not precluded by Section 301 because seeking damages for "humiliation, injury to her good name, psychological damages and expenses, and deprivation of her liberty did not result from her discharge but from the investigation and her subsequent arrest on theft charges."[8]) (internal quotation marks omitted). Referencing Cole, the District Court in Fesco v. Darby Dev., LLC, CIV.A. 13-7129 JAP, 2014 WL 3556510 (D.N.J. July 18, 2014) considered a claim for malicious prosecution brought by a restaurant worker at a New Jersey racetrack who was arrested and prosecuted as a result of what she alleged was her employer's deficient investigation of her handling of tips. The Court held that her claim did result from her discharge but rather arose from her employer's grossly negligent investigation, stating "Plaintiff's alleged *injuries* did not result from her status as an employee, but rather, *resulted from her status as an arrestee*.") (emphasis added). The reasoning of the Cole and Fesco courts applies here.

### 2. Plaintiffs' Claims Are Not Subject To The Bar of Statute of Limitations.

Plaintiffs' claims of malicious prosecution and wrongful use of civil proceedings are not time-barred. Under 42 Pa.C.S. §5524(1) and (7), these claims are subject to a two year limitation period. The time period begins to accrue when the criminal or civil proceedings terminated. See Zappala v. Hub Foods. Inc., 683 F.Supp. 127 (W.D. Pa. 1988); Cap v. K-Mart Discourit Stores, Inc., 515 A.2d 52 (Pa. Super. 1986). In this case, the Gambling Control Board withdrew all charges against Plaintiffs February 25, 2013, so Plaintiffs would ha-ve had until February 24, 2015 to file a claim for wrongful use of civil proceedings against Defendants. The Court of

---

[8] Plaintiffs requests for relief include compensation for "lost income and benefits". Giving plaintiffs' allegations the benefit of all favorable inferences, these damages relate to their inability to find gainful employment reasonably equivalent in pay and benefits to that which they enjoyed at Harrah's following the institution of charges against them. These damages certainly cannot reasonably be regarded as those that might be at issue were the subject matter reviewed through a union grievance procedure where job restoration might be a possible remedy.

Common Pleas of Delaware County dismissed all criminal charges against the Plaintiffs on October 15, 2013.  Thus, Plaintiffs would have had until October 14, 2015 to file a claim for malicious prosecution against Defendants.

Plaintiffs' claims are not preempted under §301 of the LMRA and, thus, are no time-barred.Claims that are preempted under §301 have a six month limitation period. See Myers v. AK Steel Corp., 156  Fed.Appx. 528, 531 (3rd Cir. 2005). As previously discussed, Plaintiffs' claims are not pre-empted under §301 of the LMRA.  Accordingly, the claims are not subject to the six-month limitation period,  and the two-year limitation under Pennsylvania statutory periods apply. Thus, Plaintiffs' claims for malicious prosecution and wrongful use of civil proceedings are not time-barred.

### C. **PLAINTIFFS COMPLAINT ADEQUATELY PLEADED FACTS MAKING OUT CAUSES OF ACTION IN MALICIOUS PROSECUTION AND WRONGFUL USE OF CIVIL PROCEEDNGS.**

Defendant raises factual and legal defenses to Plaintiffs' First Amended Complaint arguing they are barred because: (1)  as to claims for malicious prosecution and wrongful use of civil proceedings, Defendant's agents were compelled by law to report criminal behavior to appropriate authorities; (2) as to the claim of malicious prosecution, the magisterial district court found probable cause for the arrests of the Plaintiffs; (3) as to the claim for wrongful use of civil process Plaintiff has no standing to bring the action; and (4) as to the action for wrongful use of civil process, the allegations fall short of the standards.

#### 1. **The Question of "Legal Compulsion" Is A Question of Fact Not Appropriately Raised on Motion to Dismiss.**

Addresssing the substantive allegations of the Malicious Prosecution action, the defendant claims that it cannot have acted with malice because under the terms of the CBA, management is privileged to report to police any activity it believes may constitute "suspected"

criminal behavior. The plaintiffs' First Amended Complaint avers that in creating their presentations to state police and a state agency the defendant's agents fabricated inculpatory facts and omitted exculpatory facts in order to obtain the Plaintiffs' arrest and prosecution. (First Amd. Cmp. ¶¶ 49-50, 55, 86-95, 105-115).

Accepting Plaintiffs' allegations as true, and drawing all inferences therefrom in Plaintiffs' favor, there is no basis at this stage of the proceedings to conclude that Harrah's management was not in fact acting out of tortious malice rather than within the permissible parameters of its alleged authority to report "suspicious" behavior to the police. Since the Plaintiff faces a challenge to the First Amended Complaint based upon its legal sufficiency, factual disputes about whether Harrah's actually believed or had any good-faith basis for believing that the Plaintiffs were engaged in ongoing criminal behavior are not relevant to the 12(b)(6) pleading determinations.

### 2. **A magisterial district justice's determinations of probable cause is not dispositive of that issue in a malicious prosecution case.**

"While a conviction may serve as conclusive evidence of the existence of probable cause, the action of a district justice or magistrate in holding the plaintiff over to be tried in court is not similarly conclusive." Cosmas v. Bloomingdales Bros., 442 Pa. Super. 476, 483, 660 A.2d 83, 86 (1995) citing Restatement of Torts, 2d § 663(2) (a holding over of the accused is simply evidence of probable cause)(citations omitted). "A preliminary hearing does not offer the full panoply of procedural safeguards, and the credibility of witnesses is not at issue." Id., 442 Pa. Super. at 484, 660 A.2d at 87 For this reason, the a magisterial district justice's determination that probable cause exists for an arrest and prosecution is not conclusive of that issue, but merely affirmative evidence of the existence of probable cause. Id.

"As affirmative evidence, a holding over is to be considered along with all of the other

evidence offered by the parties on the issue of probable cause. Id. (citations omitted)  Plaintiffs'

complaint includes allegations that call into serous question the credibility of both Ms. Harper,

Defendant's agent, and Trooper Dragotta and the quality of the evidence they presented before

the magisterial district justice. (Amd. Cplt. ¶¶ 86-95, 105-115).  Thus, accepting those

allegations as true at this stage of the proceedings, they have alleged sufficient facts to withstand

a motion to dismiss.

### 3.  The Plaintiffs Have Standing To Bring The Wrongful Use of Civil Proceedings Action and the Defendant Is A Proper Party To The Action.

The Pennsylvania  cause of action for Wrongful Use of Civil Proceedings is statutory.

The statute states:

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings: (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Cons. Stat. Ann. § 8351 (West).

Defendant insists that by the terms of the Pennsylvania statute, it cannot be sued because

"[t]here was no civil lawsuit initiated by the Plaintiff.  The only proceeding that took place was

an internal proceeding before the Pennsylvania Gaming Control Board."  There is no basis in the

language of the statute for inferring a requirement that the plaintiff asserting the claim of

wrongful use of civil proceedings had to have initiated the underlying claim.  Such a factual

scenario would, in any case make no sense because under all circumstances, the Plaintiff would

be the party injured by the institution of such proceedings.

Even if Defendant meant to say that Harrah's did not bring the underlying complaint, the

argument still fails to take into account the statutory language at issue.  The provision at issue

begins by stating: "A ***person who takes part*** in the procurement, initiation or continuation of civil proceedings against another ***is subject to liability*** to the other . . ." 42 Pa. Cons. Stat. Ann. § 8351. The statute by its clear terms permit suit against one who "takes part in ***the procurement, initiation or continuation*** of civil proceedings . . . primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." Accepting the allegations of the Amended Complaint as true, Defendants took part in each of the prerequisite conditions permitting the institution of suit against it under Pennsylvania law.

### 4. **The Plaintiffs' Allegations Adequately Present "Plausible Claims"**

Defendant's assert that Paragraph 77 of the First Amended Complaint represents the entire factual basis for Plaintiffs' "Wrongful Use" cause. Presumably Defendant asserts the pleadings fail because of their factual insufficiency. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 663-64, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009).

The Amended Complaint adequately alleges that Defendant procured, initiated and aided in the continuation of the civil proceedings in a grossly negligent manner and without probable cause and for "a purpose other than discovery, joinder, or adjudication." Defendant began and carried out an investigation and created a subsequent report, including inaccurate, incomplete, and false information regarding Plaintiffs and their purportedly unlawful conduct. (Amd. Cplt. ¶¶ 53-55). Plaintiffs allege that Ms. Harper, Harrah's supervisor of surveillance, reported the investigation and subsequent action to the Bureau of Casino Compliance, which reported the

situation to the Gaming Control Board and the Pennsylvania State Police. (Amd. Cplt. ¶¶ 60, 75-76). Ms. Harper provided the Bureau of Casino Compliance and the State Police with the inaccurate, incomplete, and false report that she had prepared and, as a result, Plaintiffs were charged with violations under the Gaming Control Board (civil proceedings) and had to surrender their non-gaming license. Amended Complaint . (Amd. Cplt. ¶¶ 78-80)

Plaintiffs alleged that that Harrah's management ordered Ms. Harper to conduct her investigation in order to foil employee and union activities surrounding wage and hour issues initiated by Plaintiffs and co-workers. (Amd. Cplt. ¶ 49). They did so by using computerized restaurant records and copies of comp records to create the impression that Plaintiffs engaged in a pattern of obtaining unauthorized gratuities at the expense of Harrah's and its patrons. . (Amd. Cplt. ¶¶ 49, 140). Ms. Harper based her conclusions that Plaintiffs engaged in systematic theft of comp credits on the theory that Harrah's gratuity policy prohibited wait staff from charging an amount in excess of eighteen percent (18%) of any.restaurant bill. (Amd. Cplt. ¶¶ 55).

Harrah's in fact had no written policy prohibiting wait staff from accepting gratuities assigned against comps or limiting wait staff gratuities to some particular percentage of a patron's restaurant bill. (Amd. Cplt. ¶ 87). Moreover, the Gaming Control Board regulations permit the use of comps for payment of "services" including payment of gratuities. (Amd. Cplt. ¶ 89). As to her accusation that Plaintiff, Ms. Clements, committed the crime of forgery, Ms. Harper recklessly or deliberately disregarded Casino records and information she obtained in her own investigation indicating Ms. Clements properly obtained and distributed gratuity monies to her co-workers (Amd. Cplt. ¶¶ 95-105). The Gaming Control Board's Bureau of Investigations petitioned for withdrawal of all charges against Plaintiffs in January, 2013. (Amd. Cplt. ¶ 116) On February 25, 2013, the Gaming Control Board withdrew all charges against Plaintiffs while

the criminal case was still pending. (Amd. Cplt. ¶ 117).

Taking into account misrepresentations and material omissions of fact alleged to be apparent in Ms. Harper's investigative report, reasonable inferences from the allegations presented permit the conclusion that her investigation and subsequent report were grossly negligent, and failed to establish any basis for a probable cause for Plaintiffs' prosecution. Although a Pennsylvania magisterial district justice later found probable cause, that conclusion is not dispositive here. See <u>Cosmas</u>, supra., 442 Pa. Super. at 483.  Accepting these allegations as true and drawing all reasonable inferences in Plaintiffs' favor, Harrah's management knew or should have known that Ms. Harper's investigative report would set in motion the civil proceedings at issue before the Gaming Control Board. Accepting as true Plaintiffs allegations, Harrah's management provided Ms. Harper's report to the prosecutorial arm of the Gaming Control Board for a purpose other than discovery, joinder, or adjudication.

WHEREFORE, Plaintiffs, Catherine Roberts and Kristen Clements respectfully request that Defendant, Caesar's Entertainment Corporation's, motion to dismiss be DENIED.

SCHROM, SHAFFER & BOTEL,

/s/ Gerard K. Schrom
Gerard K. Schrom, Esquire
E.D. Pa. I.D. No. (GKS2134)

/s/ Neil E. Botel
Neil E. Botel, Esquire
E.D. Pa. I.D. No. (NEB0703)

Attorneys for Plaintiffs
Catherine Roberts and
Kristen Clements