IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CATHERINE ROBERTS and | : | CIVIL ACTION |
| KRISTEN CLEMENTS | : | |
| | : | |
| v. | : | NO. 14-3890 |
| | : | |
| CAESAR'S ENTERTAINMENT, INC. and | : | |
| CPL. JOANNE DRAGOTTA | | |

MEMORANDUM OPINION

**Savage, J.**                                                                              **December 11, 2014**

This action arises out of the arrest and the prosecution of two former employees, union members, for theft at the instigation of the employer. In moving to dismiss the amended complaint, the defendants raise two issues: (1) whether the plaintiffs have sufficiently alleged a deprivation of liberty constituting a seizure under the Fourth Amendment necessary to satisfy an essential element of a § 1983 cause of action based on a malicious prosecution theory; and (2) whether the state law claims are preempted by federal labor law.

Plaintiffs Catherine Roberts and Kristen Clements assert a federal claim under 42 U.S.C. § 1983 based on malicious prosecution against Joanne Dragotta, the Pennsylvania State Trooper who arrested them and filed the criminal charges,[1] and state law claims against Caesar's Entertainment,[2] their employer, for malicious

---

[1] Am. Compl. ¶¶ 120-28; 145-50 (Doc. No. 12)

[2] Plaintiff has incorrectly identified the defendant-employer as Caesar's Entertainment, Inc. The correct name is Harrah's Chester Downs Management Company, LLC d/b/a Harrah's Philadelphia Casino & Racetrack. For consistency purposes, we shall refer to the defendant as Caesar's.

prosecution and wrongful use of civil process.[3]  In their amended complaint, they contend that Caesar's management "had the[m] . . . arrested and prosecuted" and that Cpl. Dragotta "participated in the arrest, detention and prosecution of the plaintiffs."[4]

Both defendants have filed motions to dismiss plaintiffs' first amended complaint. Dragotta argues that plaintiffs fail to state a claim against her because they have not adequately pled a deprivation of liberty, an essential element of a Section 1983 malicious prosecution cause of action.[5]  Caesar's seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), contending that plaintiffs' claims relate solely to protected union activity, which are preempted by Section 301 of the Labor Management Relations Act and are time-barred.[6]  It also contends that plaintiffs' claims must be dismissed because Caesar's had a legal obligation to report any theft or suspected theft to the Pennsylvania State Police and Gaming Control Board.[7]

We conclude that the plaintiffs have not pleaded facts which, if proven, would establish a deprivation of liberty, an essential element of their § 1983 claim based on malicious prosecution against Dragotta.  We also hold that their state law claims for malicious prosecution and abuse of process against Caesar's are not preempted.

---

[3] *Id.* ¶¶ 129-44.  Plaintiffs' amended complaint does not assert claims against Dragotta for false arrest and false imprisonment that had been asserted in the original complaint.  Pl.'s Compl. ¶¶ 143-48 (Doc. No.1).  Additionally, in their response to Dragotta's motion to dismiss, the plaintiffs withdrew their state law claim for malicious prosecution.  Pl.'s Opp'n to Dragotta's Mot. to Dismiss at 3 (Doc. No. 18). Therefore, the only remaining claim against Dragotta is plaintiffs' Section 1983 claim for malicious prosecution.

[4] Am. Compl. ¶ 1 (Doc. No. 12).

[5] Pl.'s Opp'n to Dragotta's Mot. to Dismiss at 7; Dragotta's Mot. to Dismiss at 3-5 (Doc. No. 14).

[6] Caesar's Mot. to Dismiss at 1-2 (Doc. No. 16).

[7] *Id.* at 2.

Therefore, we shall grant Dragotta's motion to dismiss and deny Caesar's motion to dismiss.

## Background

The facts alleged in the amended complaint, which we must accept as true, recite the history of the events that the plaintiffs assert form the basis for their claims. Roberts and Clements were employed as waitresses at Harrah's Philadelphia Casino in Chester, Pennsylvania, which is owned by Caesar's Entertainment, a Delaware corporation. They were union employees covered by a collective bargaining agreement between Harrah's and Unite Here Local 54.[8]

Caesar's issued free spending credits, known as "comps," to favored customers in the form of paper certificates.[9] The certificates were redeemed in payment for meals and beverages. Managers could issue comps orally without paper certificates.[10] Management recorded and reviewed all comp-based transactions, including gratuities, using Caesar's MICROS accounting software system.[11] Wait staff were required to have an authorized manager validate payment of the bill, which included gratuities, into the MICROS system.[12]

After conducting a review of the March 2012 MICROS and comp records, Mary Harper, Caesar's Director of Surveillance, submitted a report to Caesar's managers and

---

[8] Am. Compl. ¶ 23.

[9] *Id.* ¶ 30.

[10] *Id.* ¶ 32.

[11] *Id.* ¶ 39.

[12] *Id.* ¶¶ 44-46.

3

administrators.[13] In her report, Harper claimed that six wait staff employees, including plaintiffs, assigned unauthorized payment of gratuities from paper and verbal comps to themselves.[14] Plaintiffs allege that "as a matter of custom and practice at the Cove," wait staff were permitted to assign gratuities to themselves against any portions of a written or verbal comp without patron endorsement of the MICROS receipt as long as the assignment of the gratuity was approved by a manager.[15]

Harper also accused Clements of having committed theft by forging casino documents.[16] Clements alleges that Caesar's management designated her to redeem all gratuities registered on the MICROS system for cash at the close of every business day and to distribute the cash to members of the wait staff, which required her to get the "pro forma approval of a Cove manager" on a "disbursement of funds" sheet.[17] Harper accused Clements of forging the signature of Banquet Manager Joel Friedman on one special events bill. Clements contends that she had permission to write "per Joel Friedman" on the bill.[18]

---

[13] *Id.* ¶¶ 50-52.

[14] *Id.* ¶ 53. Absent the opportunity to review the Harper report, which was not appended to any pleading, it appears that Harper's theft allegations stem from plaintiffs' appropriation of the remaining value of patron comps left over after the comps were applied to their bills. When Cove patrons paid their bills with vouchers, the wait staff applied the voucher to the cost of the bill and then took the remainder as a gratuity.

[15] Am. Compl. ¶¶ 91-94.

[16] *Id.* ¶ 54.

[17] *Id.* ¶¶ 98-100.

[18] *Id.* ¶ 113.

After interviewing all six Cove wait staff and the Cove bartender, Caesar's suspended the wait staff.[19] Plaintiffs contend that the report was based on Harper's theory that any gratuity in excess of 18 percent of the total bill was an excessive tip.[20] Harper presented her report to Dragotta, including her account of Cove employee statements made during their interviews.[21] Dragotta drafted affidavits of probable cause and obtained warrants for plaintiffs' arrest based on the information provided by Harper, "along with the falsehoods [Dragotta] added and omissions she withheld."[22]

Roberts was charged with receiving stolen property in the amount of $627.77. Clements was charged with theft in the amount of $2,551.74, receiving stolen property and forgery.[23] Roberts and Clements surrendered to Dragotta on May 1, 2012.[24] They were arrested, fingerprinted, photographed and handcuffed in the on-site State Police office. They were then transported to the Chester City Police Station where they were placed in a holding cell until later that afternoon when they were brought before a magisterial district justice.[25]

At their initial appearance, they were formally charged and released on their own recognizance. As a condition of their release, plaintiffs were prohibited from leaving

---

[19] *Id.* ¶ 56.

[20] *Id.* ¶¶ 55, 86. Importantly, Caesar's had no written policy limiting wait staff gratuities. *Id.* ¶ 87.

[21] *Id.* ¶ 58.

[22] *Id.* ¶ 60.

[23] *Id.* ¶¶ 61-62 (Doc. No. 12).

[24] *Id.* ¶ 63.

[25] *Id.* ¶¶ 64-67.

Pennsylvania without permission.[26]

After a preliminary hearing, the plaintiffs were held over for trial.[27]  Pending trial, plaintiffs were required to appear at "numerous" hearings.[28]  Ultimately, the Court of Common Pleas dismissed the criminal charges, finding a lack of probable cause.[29]

**Analysis**

When considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff.  *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).

A "formulaic recitation of the elements of a cause of action" is not sufficient to survive a motion to dismiss.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). (citation omitted).  The complaint must include "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."  *Id.* at 562 (quoting *Car Carrier, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis in original).

*Section 1983 Malicious Prosecution Claim Against Dragotta*

A Section 1983 claim must state facts demonstrating that the plaintiff was deprived of a federal right by a person acting under color of state law.  *Gomez v.*

---

[26] *Id.* ¶¶ 67-68.

[27] *Id.* ¶¶ 69-72.

[28] *Id.* ¶ 73.  Once charged, the plaintiffs were suspended from Caesar's and ordered by the Gaming Commission to surrender their non-gaming licenses pending the outcome of investigations into Harper's allegations.  These licenses have not been restored.  Am. Compl. ¶¶ 80-83.

[29] *Id.* ¶¶ 84, 119.

*Toledo*, 446 U.S. 635, 640 (1980); *Miller v. Mitchell,* 598 F.3d 139, 141(3d Cir. 2010). The parties do not dispute that Dragotta was acting under color of state law. The question is whether plaintiffs have pleaded sufficient facts, which if proven, would establish that they suffered a deprivation of liberty as a result of Dragotta's actions. More specifically, we ask whether they have sufficiently alleged that the restrictions imposed upon them constituted a seizure within the meaning of the Fourth Amendment.

To state a claim for malicious prosecution under Section 1983, Roberts and Clements must allege sufficient facts to demonstrate that: 1) Dragotta initiated a criminal proceeding; 2) the criminal proceeding ended in their favor; 3) Dragotta initiated the proceeding without probable cause; 4) Dragotta acted maliciously or for a purpose other than bringing them to justice; and 5) as a consequence of the proceeding, they suffered a deprivation of liberty consistent with the concept of a seizure. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). Dragotta does not contest that the plaintiffs have alleged sufficient facts to satisfy the first four elements.[30] Thus, our analysis is confined to the fifth element – whether the alleged facts, if proven, would establish a constitutional violation, a deprivation of liberty by a seizure.

A federal malicious prosecution claim is "intended to redress [the] deprivation of liberty accompanying prosecution, not prosecution itself." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (citations omitted); *Gallo v. City of Philadelphia*, 161 F.3d 217, 222-24 (3d Cir. 1998) (interpreting *Albright v. Oliver*, 510 U.S. 266 (1994)). The claim arises from the prosecution, not the arrest. The alleged seizure must emanate from the prosecution, and "must occur chronologically after the

---

[30] Dragotta's Mot. to Dismiss at 3-4.

pressing of charges." *See Basile v. Twp. of Smith,* 752 F. Supp. 2d 643, 659 (W. D. Pa. 2010) (citing *Penberth v. Krajnak,* No. 06-1023, 2008 WL 509174, at *17–18 (M. D. Pa. Feb. 21, 2008)); *see also Lopez v. Maczko,* No. 07-1382, 2007 WL 2461709, at *3-4 (E.D. Pa. Aug. 16, 2007).  What occurred prior to the prosecution, that is, the time between arrest and the lodging of formal charges, is not a basis for a malicious prosecution claim.

What matters are the conditions imposed after prosecution began.  To rise to the level of a Fourth Amendment violation, the seizure must result in either pretrial custody or "some onerous types of pretrial, non-custodial restrictions."  *DiBella,* 407 F.3d at 603. Merely having to appear in court to answer charges does not qualify as a Fourth Amendment seizure.  *Basile*, 752 F. Supp. 2d at 659-60 (citing *DiBella*, 407 F.3d at 603).

In *Gallo*, the plaintiff's post-indictment liberty was deemed sufficiently restricted because "he had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania for over eight months."  *Gallo,* 161 F.3d at 222.  Acknowledging it was "a close question," the Third Circuit concluded that these restrictions amounted to a Fourth Amendment seizure.  *Id.*

In this case, after they were charged and arraigned, Roberts and Clements were released on their own recognizance.  Although their freedom to travel was subject to approval, they were not required to report to pretrial services.[31]  Subsequently, they

---

[31] Am. Compl. ¶¶ 64-68.  Additionally, at a hearing on the motions to dismiss, plaintiffs' counsel stated that they asked for and received permission from the court to travel out of state to attend a birthday

attended hearings, including a preliminary hearing.[32]

The conditions imposed here were not as severe as those which the *Gallo* court determined were just enough to constitute a seizure. After the prosecution was initiated, Roberts and Clements were not held in pre-trial custody. Nor were any onerous non-custodial restrictions imposed upon them. Although permission to travel was needed, travel was not restricted. There were no other limitations on their freedom.[33] The pretrial release conditions, although inconvenient, were not so onerous to constitute a deprivation of liberty consistent with a Fourth Amendment violation. Therefore, the federal claim against Dragotta will be dismissed.

*Pennsylvania State Law Claims Against Caesar's*

Having dismissed the federal claim against Dragotta, we turn to the state law claims against Caesar's for malicious prosecution and wrongful use of civil process.

To state a cause of action for malicious prosecution under Pennsylvania law, plaintiffs must show that Caesar's: (1) instituted criminal proceedings against them; (2) without probable cause; (3) with malice; and (4) the proceedings were terminated in their favor. See *e.g. Turano v. Hunt,* 631 A.2d 822, 824 (Pa. Commw. Ct. 1993).

To state a cause of action for wrongful abuse of civil process against Caesar's, Roberts and Clements must show that: (1) Caesar's caused the proceedings to be

---

party. Unlike in *Gallo*, Roberts and Clements were permitted to leave the jurisdiction during the pendency of the case. Hr'g. on Mot. to Dismiss, Nov. 5, 2014 at 4:21-25.

[32] Id. ¶ 73.

[33] Being required to attend court hearings does not amount to a detention or seizure. *Skeens v. Shetter*, No. 04-4474, 2006 WL 827782, at *12 (D.N.J. Mar. 30, 2006). Therefore, we find that even if attendance at hearings was coupled with a travel restriction, as is the case here, that combination is insufficient to give rise to a Section 1983 malicious prosecution claim in light of the four circumstances in *Gallo* being considered a "close question."

initiated without probable cause; (2) the proceedings were instituted primarily for an improper purpose; and (3) the proceedings terminated in their favor.  *See e.g.*, *Kelly-Springfield Tire Co. v. D'Ambro*, 596 A.2d 867, 869 (Pa. Super. 1991).

In its motion to dismiss, Caesar's argues that the malicious prosecution and abuse of process claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA").  Caesar's preemption argument is two-fold.  First, it argues that resolving the plaintiffs' claims requires an interpretation of the collective bargaining agreement ("CBA"), a task that is within exclusive federal jurisdiction.  Second, it contends the claims arise out of a labor dispute involving protected labor rights and prohibited labor practices that must be adjudicated by the National Labor Relations Board ("NLRB").

### *Garmon* Preemption

As a general rule, disputes between parties to a collective bargaining agreement are preempted by the National Labor Relations Act ("NLRA") and are within the exclusive jurisdiction of the NLRB.  *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959).  *Garmon* preemption adheres where the conduct at issue is actually or arguably protected by Section 7 of the NLRA, or prohibited as an unfair labor practice under Section 8.  *Garmon*, 359 U.S. at 244.  Section 7 of the NLRA protects the right of employees to "self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."  29 U.S.C. § 157.  Section 8 of the NLRA prohibits labor practices that "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in

Section 7, or that discriminat[e] in regard to any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158. If a cause of action implicates protected activity under Section 7 or conduct prohibited by Section 8, the cause of action is preempted. *See Voilas v. General Motors Corp.*, 170 F.3d 367, 378 (3d Cir. 1999).

There are exceptions to the *Garmon* rule. *Garmon* does not preempt state court actions where the complained of conduct is only peripherally concerned with the NLRA or where the state has an "overriding" interest in protecting its residents from malicious conduct resulting in harm that cannot be remedied by the NLRB. *Farmer v. United Brotherhood. Of Carpenters and Joiners of America*, 430 U.S. 290, 296, 298 (1977). In other words, under the latter exception, application of the *Garmon* rule gives way "where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." *Id.* at 302.

Caesar's alleged conduct cannot be considered of peripheral concern to the NLRA. What it is accused of having done certainly falls within prohibited activities. Nonetheless, it does fall within the local interest exception.

When conduct implicates a state concern, we use a balancing test, weighing the State's interest in protecting its citizens from the challenged conduct against the risk of interference with the federal regulatory scheme. *See Farmer v. United Bros. of Carpenters and Joiners of America, et al.*, 430 U.S. 290, 297, 302 (1977); *Sears, Roebuck & Co. v. San Diego Cnty Dist. Council of Carpenters*, 436 U.S. 180, 188-89, 196-97 (2003) (determining that the question of whether conduct implicates local

11

interests "involves a sensitive balancing of any harm to the regulatory scheme established by Congress"). Where there is little or no risk of interference with federal labor policy, the state's interest prevails.

Roberts and Clements reference the CBA. But, they do not base their causes of action on it. Although the amended complaint references the collective bargaining agreement and union activity, it does not assert any violation of the NLRA. It does not allege that Caesar's wrongfully terminated Roberts and Clements in violation of the CBA or the NLRA in retaliation for engaging in protected union activities.

Specifically, Roberts and Clements claim that Caesar's "wrongfully retaliated against them for asserting their contractual rights to fair pay and fair working conditions under the terms of their union collective bargaining agreement" and that Caesar's maliciously prosecuted plaintiffs and wrongfully used civil proceedings against them "in retribution for exercising their union collective bargaining rights."[34] Roberts and Clements claim that along with five other Cove wait staff, they notified the union that management was violating the terms of the collective bargaining agreement.[35] They attended meetings and participated in attempts to organize collective action to address violations concerning pay, break-time and working conditions.[36] Roberts and Clements also contend that in retaliation for their union activities, Caesar's directed Harper to investigate the Cove wait staff "for the purpose of establishing a basis for filing criminal charges against Cove wait staff."[37]

---

[34] Am. Compl. ¶¶ 1, 130, 140.

[35] *Id.* ¶¶ 24-25.

[36] *Id.* ¶¶ 24, 26.

[37] *Id.* ¶¶ 27-29, 49-50.

Caesar's relies on this language in the complaint to support its preemption argument. Undoubtedly, the references to the union activity and Caesar's response to it do raise issues in the labor-management context that could form the basis for unfair labor practices. However, Roberts and Clements assert this activity and conduct not as a basis for unfair labor practice charges, but rather as supplying the essential elements of malice for their malicious prosecution and improper purpose for abuse of process causes of action. In short, these allegations, although they can also support charges before the NLRB, are made to support the state law causes of action.

Roberts and Clements allege that Caesar's falsely reported to Dragotta that they had taken unearned gratuities. The allegations that Caesar made false reports to Dragotta and instigated the criminal and Gaming Commission proceedings are offered to show the malice necessary to state a malicious prosecution claim, and the lack of probable cause and improper purpose elements necessary to state a wrongful use of process claim.[38] In other words, these allegations form the basis of the plaintiffs' state law claims against Caesar's even though they also address Section 7 or Section 8 elements.

Resolving the state claims does not require a determination that Roberts and Clements engaged in union activity protected by Section 7 or that Caesar's committed acts prohibited by Section 8. We need not make such a determination in order to find that plaintiffs have pleaded sufficient facts to state causes of action for malicious prosecution or wrongful use of civil proceedings under Pennsylvania law. Additionally,

---

[38] In their opposition to Caesar's motion to dismiss, plaintiffs contend that their claims fall within the compelling state-interest exception to preemption, that the NLRB is not the exclusive forum, and that Section 301 prevents preemption because the CBA does not explicitly reference or govern comps. Pls.' Opp'n to Caesar's Mot. to Dismiss at 8 (Doc. No. 19).

13

there is no provision in the NLRA that protects the "malicious conduct" that Roberts and Clements allege in Count Two of their amended complaint or the "wrongful conduct" they allege in Count Three.

Roberts and Clements allege that Caesar's instigated an investigation into conduct it knew did not violate any laws or policies, fabricated a report to support false charges of theft, caused their arrest, prosecuted them without probable cause, and initiated civil proceedings before the Pennsylvania Gaming Commission.[39] The causes of action are intentional torts which require a showing that Caesar's acted intentionally and maliciously. *Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n.*, 90 F.3d 797, 803 (3d Cir. 1996) (citations omitted).

In *Linn v. United Plant Guard Workers of America*, *Local 114,* 383 U.S. 53, 61 (1966), the Supreme Court recognized an "overriding state interest" in protecting citizens from malicious libels. The same interest comes into play in the case of malicious prosecution and abuse of process. Pennsylvania has a strong interest in protecting its residents from the misuse of criminal and civil processes, and seeing that its residents obtain redress for malicious torts. The NLRB, which does not consider personal injury claims caused by malicious conduct, is without power to award damages in such cases. *Linn*, 383 U.S. at 63-64. Additionally, Pennsylvania has its own interest in discouraging the filing of malicious and baseless lawsuits which burden the justice system.

Adjudicating the plaintiffs' state law claims here will not disrupt the federal scheme of labor regulation or interfere with the NLRB's ability to resolve controversies reserved to it by the LMRA. As in *Linn* and *Farmer*, this action "can be adjudicated

---

[39] Am. Compl. ¶¶ 49-58; 74-83 (Doc. No. 12)

14

without regard to the merits of the underlying labor controversy." *Farmer*, 430 U.S. at 300. The plaintiffs need not prove that Caesar's violated Section 8 in order to prove that Caesar's acted with malice, without probable cause and for an improper purpose. Therefore, we conclude that the adjudication of plaintiffs' intentional tort claims does not disrupt the federal regulatory scheme because it does not require a decision on the merits of an underlying labor dispute.

In *Linn*, the Supreme Court recognized that an injured party may seek relief in state court and from the NLRB at the same time. *Linn*, 383 U.S. at 66. The same is true here. If Roberts and Clements had made unfair labor practice claims, the NLRB could have determined whether their union activity was protected by Section 7 and that Caesar's alleged retaliation violated Section 8. *See Farmer*, 430 U.S. at 298. However, the availability of NLRB jurisdiction over possible unfair labor charges does not preclude adjudication of the plaintiffs' state law claims arising from the same conduct.

There is no real risk that proceeding with the state causes of action will interfere with the administration of federal labor policy. Nor will it result in state regulation of conduct exclusively within the jurisdiction of the NLRB. On the other hand, it will permit the plaintiffs, if they prove their case, to recover damages the NLRB is powerless to award.

After balancing the nature of the federal and state interests in the conduct and the available remedies on the one side, and the potential for interference with the federal administration of labor policy on the other side, we conclude that the plaintiffs' state causes of action are not preempted by the *Garmon* rule.

**Section 301 of the Labor Management Relations Act ("LMRA") Preemption**

The LMRA grants federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . ." 29 U.S.C. § 185(a). Federal courts have exclusive jurisdiction over the resolution of disputes covered by a collective bargaining agreement. *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 231-32 (3d Cir. 1999); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11, 220 (1985); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102 (1962). Where the resolution of a state law claim depends on the interpretation of a collective bargaining agreement, it is preempted by federal labor law. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988). On the other hand, where the state law claims are independent of and do not require interpretation of a collective-bargaining agreement, they are not preempted. *Lingle*, 486 U.S. at 408-10.

In this case, Caesar's contends that the claims implicate the provisions of the CBA governing "dishonesty" and "licensure."[40] Specifically, Caesar's argues that "proof that [Caesar's] acted with malice would require interpreting the CBA" because "[Caesar's] could not act with an improper motive if it was authorized by the CBA to contact the [state police], discharge, or otherwise discipline [the] plaintiffs."[41]

Caesar's misses the point. The plaintiffs do not dispute that Caesar's was required under the CBA and state regulations to report employee theft. They allege Caesar's maliciously made a false report of theft for improper purposes. To prove these allegations, the plaintiffs need not reference the CBA. Nor does resolving the disputed

---

[40] Caesar's Mot. To Dismiss at 10 (Doc. No. 16-1).

[41] *Id.* at 10-11.

16

facts and the claims require an interpretation of the CBA. There is no need to evaluate the CBA in order to determine if Caesar's acted with malice, without probable cause and for an improper purpose.

In their amended complaint, the plaintiffs contend that Harper fabricated and omitted facts in her investigation report for the purpose of causing Dragotta to arrest and prosecute them and to initiate proceedings to revoke their licenses before the Pennsylvania Gaming Control Board. Accepting the plaintiffs' allegations as true, as we must at this stage, the amended complaint describes tortious conduct that has nothing to do with how the CBA defines dishonesty or licensure procedures and requirements.

Again, the plaintiffs have not complained of improper discharge or discipline, which would implicate the CBA. Instead, they complain that Caesar's maliciously prosecuted them and wrongfully used civil proceedings against them, claims independent of the terms of the CBA. Determining whether Caesar's acted maliciously and without probable cause and with an improper purpose does not rest on the interpretation or violation of the CBA. *See New Jersey Carpenters and the Trustees v. Tishman Construction Corp. of New Jersey*, 760 F.3d 297, 305-06 (3d Cir. 2014). Therefore, we conclude that Roberts and Clements' claims are not preempted by Section 301 because they are not based on the CBA and do not require interpretation of the CBA.

<u>Caesar's Obligation to Report Theft</u>

Caesar's also argues that it cannot be liable because it was legally required to report theft to the Pennsylvania State Police and to the Pennsylvania Gaming Control

Board.[42] Caesar's contends that, in light of this obligation, its conduct was neither malicious nor grossly negligent, essential elements of the causes of action for malicious prosecution and wrongful use of civil proceedings.[43]

Caesar's mischaracterizes the complaint. It also ignores the Rule 12(b)(6) standard that requires us to accept as true the plaintiff's allegations. As we already noted, the plaintiffs do not dispute that Caesar's had an obligation to report employee theft. They allege that Caesar's fabricated the charges of theft, and knowingly and intentionally omitted material facts in order to have them prosecuted criminally and charged civilly by the Gaming Commission. In short, Roberts and Clements' claims are based on their allegations that Caesar's knew there was no theft and orchestrated the criminal and Gaming Commission proceedings for an improper purpose.

Caesar's argument rests on the premise that Harper's report was truthful and accurate. At this stage, we cannot make a factual determination whether there was theft. On the contrary, we must accept the allegations that the plaintiffs did not commit any theft and Caesar's fabricated the charge that they did.

## Conclusion

The amended complaint does not plead sufficient facts, which if proven, would establish that there was a Fourth Amendment seizure.[44] Roberts and Clements' state law claims are not preempted. Therefore, the motions to dismiss will be denied.

---

[42] *Id.* at 13-15.

[43] *Id.* at 15.

[44] The plaintiffs cannot cure this deficiency by filing a second amended complaint. They have described the pretrial conditions that were imposed upon them. They are insufficient to constitute a seizure.